Sheri Thome
Nevada Bar No. 008657
J. Scott Burris
Nevada Bar No. 010529
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
300 South Fourth Street, 11th Floor
Las Vegas, NV  89101
(702) 727-1400; FAX (702) 727-1401
E-mail:Sheri.Thome@wilsonelser.com
　　　　J.Scott.Burris@wilsonelser.com

*Attorneys for Plaintiff*, CHANEL, INC.

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CHANEL, INC., a New York corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NELLA CHUNKY, LLC, a Nevada limited ) <br> liability company, d/b/a fresh-tops.com ) <br> d/b/a freshtops d/b/a fresh-tops d/b/a ) <br> @freshtops, and DOES 1-10 ) <br> ) <br> Defendants. ) <br> ) | Case No. 2:15-cv-01467-GMN-PAL <br><br> **PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

Plaintiff, Chanel, Inc., a New York corporation ("Plaintiff" or "Chanel"), hereby moves this Court to enter Final Default Judgment against the Defendant Nella Chunky, LLC, a Nevada limited liability company, d/b/a fresh-tops.com d/b/a freshtops d/b/a fresh-tops d/b/a @freshtops (the "Defendant"), pursuant to Federal Rule of Civil Procedure 55(b). In support thereof, Plaintiff submits the following Memorandum of Law.

### **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff submits this Memorandum of Points and Authorities in support of its Motion for Entry of Final Default Judgment Against Defendant.

1

936094v.1

## I. INTRODUCTION

Plaintiff, Chanel, Inc. ("Chanel") initiated this action against Defendant Nella Chunky, LLC, a Nevada limited liability company, d/b/a fresh-tops.com d/b/a freshtops d/b/a fresh-tops d/b/a @freshtops (the "Defendant") through the filing of its Complaint, and subsequent First Amended Complaint, for trademark counterfeiting, trademark infringement, false designation of origin, trademark dilution, common law trademark infringement and common law unfair competition. Defendant is in default, and the prerequisites for a default judgment have been met. As relief, Plaintiff seeks entry of final default judgment finding Defendant liable on all counts of Plaintiff's First Amended Complaint. Plaintiff prays such judgment include the entry of a permanent injunction and an award of statutory damages to Plaintiff for Defendant's willful counterfeiting pursuant to 15 U.S.C. § 1117(c).

## II. STATEMENT OF FACTS

### A. Plaintiff's Rights.

Chanel is a corporation duly organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th Street, New York, New York 10019. (*Decl. of Adrienne Hahn Sisbarro in Supp. of Pl.'s Mot. for Entry of Final Default J. ["Hahn Decl."] ¶ 2, filed herewith.*) Chanel operates boutiques throughout the world, including within this District (*Hahn Decl ¶ 5*). Chanel is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this District, high quality clothing products, including pants, shirts, blouses and other goods under Federally registered trademarks (*Hahn Decl., ¶5*).

Chanel is, and at all times relevant hereto has been, the owner of all rights in and to the federally registered trademarks identified in Paragraph 4 of the Declaration of Adrienne Hahn Sisbarro (the "Chanel Marks")(*See Hahn Decl. ¶4 and Ex 1 - United States Trademark Registrations for the Chanel Marks attached thereto*). The Chanel Marks are registered in International Class 25, and are used in connection with the manufacture and distribution of a wide variety of goods, including clothing products, including pants, shirts and blouses (*Hahn Decl. ¶4*).

936094v.1

The Chanel Marks are symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned (*Id. at ¶ 5*). Moreover, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its trademarks (*Id. at ¶ 5*). Further, Chanel has extensively used, advertised, and promoted its trademarks in the United States in association with high quality clothing products, including pants, shirts and blouses, and it has carefully monitored and policed the use of the Chanel Marks (*Hahn Decl. ¶5*). As a result of Plaintiff's efforts, members of the consuming public readily identify products bearing the Chanel Marks as being quality merchandise sponsored and approved by Plaintiff (*Id.* ). Accordingly, the Chanel Marks have achieved secondary meaning as identifiers of high quality goods.

### B. Defendant's Infringing Acts.

As alleged by Plaintiff, admitted by default, and established by the evidence submitted herewith, Defendant operates an internet based retail business located within this District. Defendant is the active, conscious, and dominant force behind the sale of at least clothing products, including pants and shirts, using trademarks which are exact copies of the Chanel Marks (the "Counterfeit Goods")(*See Am. Compl. ¶¶ 4-10, 20, ECF No. 7. See also Hahn Decl. ¶¶8-10; Decl. of Sze Ying Tan in Supp. of Pl.'s Mot. for Final Default J. ("Tan Decl.") ¶¶4,6, and Exs. 1 and 4; and Decl. of Stephen M. Gaffigan in Supp. of Pl.'s Mot. for Final Default J. ("Gaffigan Decl.") ¶, and Ex.1*).

Further, as admitted by Defendant through default, at all times relevant, Defendant has had full knowledge of Plaintiff's ownership of the Chanel Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith (*Am. Compl. ¶ 19*). Defendant does not have, nor has it ever had, the right or authority to use the Chanel Marks for any purpose (*Hahn Decl. ¶ 6*). However, despite its known lack of authority to do so, Defendant is engaged in the activity of promoting and otherwise advertising, selling, offering for sale, and distributing its Counterfeit Goods via its online retail storefront within this District (*See Am. Compl. ¶ 20; See also Hahn Decl. ¶¶ 8-10; Tan Decl., ¶¶4, 6 and Exs. 1 and 4; Gaffigan Decl. Ex. 1*).

936094v.1

Plaintiff's evidence, obtained as a result of its investigation of Defendant clearly demonstrates Defendant is engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and sale of goods bearing a counterfeit of the Chanel Marks. As part of its ongoing investigation regarding the sale of counterfeit products, Plaintiff retained Investigative Consultants, Inc. to investigate the sale of counterfeit products by Defendant (*See Hahn Decl. ¶7*).

On April 10, 2015, Chanel's investigator Sze Ying Tan accessed the Defendant's online retail website operating under the domain name "fresh-tops.com," and purchased a pair of pants from the Defendant (*Tan Decl., ¶ 4 and Ex. 1*).

The pair of pants purchased from the Defendant were analyzed by Plaintiff's representative, Adrienne Hahn Sisbarro, who is familiar with Plaintiff's genuine goods and trained to detect counterfeits and determined to be non-genuine goods (*Hahn Decl. ¶ 10*).

**C.      Procedural History.**

On July 31, 2015, Plaintiff filed the Complaint (*ECF No. 1)* in this action against Defendant, and on October 9, 2015 filed its First Amended Complaint (*ECF No. 7)*. On August 14, 2015, the Defendant was served with a copy of the Summons and Complaint, and on October 30, 2015 was served with a copy of the First Amended Complaint (*ECF Nos. 9 and 8, respectively); See also Decl. of J. Scott Burris in Supp. of Pl.'s Mot. for Final Default J.["Burris Decl."] ¶ 2, ECF No. 10-1*). The time allowed for Defendant to respond to the Complaint has expired (*Burris Decl. ¶ 3*). Defendant has not been granted any extension of time to respond, nor has it served or filed an Answer or other response (*See id. at ¶ 3*). Prior to seeking entry of default, the parties engaged in extensive discussions in an effort to resolve this matter, however, the parties' attempts to settle were not successful and settlement discussions concluded on or about November 16, 2015 (*See id. at ¶3*). Upon the termination of the settlement discussions, Defendant, individually or through its counsel, did not request any additional time to respond nor did settlement discussions resume. Accordingly, after waiting fourteen (14) days with no response or extension request from the Defendant, Chanel requested the Clerk enter default against the Defendant (*See id. at ¶3*).

4

936094v.1

On November 30, 2015, Plaintiff filed its Request for Entry of Clerk's Default against Defendant (*ECF No. 10*) and the Clerk entered default against the Defendant on December 2, 2015 (*ECF No. 11*), for failure to appear, plead or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Accordingly, Plaintiff now moves the Court to grant Final Default Judgment against Defendant.[1]

### III.   ARGUMENT

#### A.   Default Judgment Should be Entered Against Defendant.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Personal jurisdiction over Defendant and venue in this District are proper under 28 U.S.C. § 1391 as Defendant is residing and operating its business within this District as well as shipping its counterfeit goods from this District, and causing harm to Plaintiff's business within this District.

#### 1.   Entry Default Judgment is Proper.

In the District of Nevada, to obtain a default judgment, the plaintiff must first request a Clerk's Default under Federal Rule of Civil Procedure 55(a). *Rockstar, Inc. v. Rap Star 360 LLC*, slip copy, No. 2:10-CV-00179-LRH,RJJ, 2010 WL 2773588, at * 1 (D. Nev. July 8, 2010); *citing Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir.1986); *see also* D. Nev. Local Rule 77-1(b)(2). Pursuant to the Clerk's Entry of Default, the plaintiff may then submit a motion to the court for entry of final default judgment under Federal Rule of Civil Procedure 55(b). *See id.*

Upon entry of default by the clerk, the well-pled factual allegations of a plaintiff's complaint, other than those related to damages, will be taken as true. *Id.; See also Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). As such, upon default, Defendant is deemed to have admitted all well-pled allegations in Chanel's Complaint. *See id.*; *See also* ECF No. 11.

---

[1] Defendant's counsel was fully aware Chanel intended to seek default and also received notification through the Court's ECF system of both Chanel's request for default as well as the Clerk's entry of default. Accordingly, the Defendant was fully aware that default had been entered, and yet as of the submission of this Motion, over three (3) months after entry of default, Defendant has made no attempt to set aside default or respond to Plaintiff's First Amended Complaint. Therefore, it is apparent the Defendant has made a conscious decision to not participate in this matter. (*Burris Decl. ¶4, ECF No. 10-1*).

5

Although the procedural requirements for a default are satisfied,[2] the decision to grant or to deny a request for default judgment lies within the court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When exercising this discretion, the court is guided by the following factors:

> (1) the merits of the plaintiff's claim; (2) the sufficiency of the complaint; (3) the amount of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy of the Federal Rules of Civil Procedure favoring a decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Nonetheless, despite this discretionary standard, "default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)). In this case, the First Amended Complaint, pleadings, and declarations on file and referenced herein in support of Plaintiff's Motion for Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendant.

### 2. Factual Allegations Establish Defendant's Liability.

Title 15 U.S.C. § 1114(1) provides liability for trademark infringement if, without the consent of the registrant, a defendant uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark which "is likely to cause confusion, or to cause mistake, or to deceive." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). In order to prevail on its trademark infringement claim, Plaintiff must establish (1) that it has valid, protectable trademarks, and (2) that Defendant's use of the mark is likely to cause confusion.

---

[2] Pursuant to the Federal Rules, a request for entry of default judgment requires a plaintiff to set forth: 1) when and against which party default was entered; 2) the identification of the pleadings to which default was entered; 3) whether the defaulting party is an infant or incompetent person, and if so, whether the person is adequately represented; 4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and 5) that notice of the application has been served on the defaulting party, if required. FED. R. CIV. P. 55(b)(2). As previously mentioned in section II(A) of this Memorandum, and as set forth in the Declaration of J. Scott Burris, Chanel has satisfied the procedural requirements for default judgment. (*See Burris Decl. ¶¶ 2,3.*)

6

*Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969-70 (9th Cir. 2007). *See also Brookfield Commc'ns, Inc.*, 174 F.3d at 1047.

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Plaintiff must prove Defendant used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval, of Defendant's goods by Plaintiff. 15 U.S.C. § 1125(a)(1). *See also Brookfield Commc'ns, Inc.*, 174 F.3d at 1046 n. 6. As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks" at issue. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 2763 (1992). *See also Brookfield Commc'ns, Inc.*, 174 F.3d 1036, 1046 n. 6, 1047 n. 8 (holding the same legal standard applies to Sections 32(1) and 43(a) of the Lanham Act).

To prevail on a claim for trademark dilution, a plaintiff need only show "that (1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998). Dilution through blurring, which "occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product," indisputably occurs when a famous trademark is used in commerce without authorization on goods in competition with those of the famous trademark holder. *Panavision*, 141 F.3d 1316 at 1326 n. 7; *see also Ford Motor Co. v. Lloyd Design Corp.*, 184 F.Supp.2d 665, 680 (E.D. Mich. 2002) ("The closer the junior user comes to the senior's area of commerce, the more likely it is that dilution will result from the use of a similar mark.").

936094v.1

**B.     Plaintiff's Requested Relief Should Be Granted.**

**1.     Entry of a Permanent Injunction is Appropriate.**

The Lanham Act authorizes a district court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law.  15 U.S.C. § 1116(a).  *See Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir.1997). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Moreover, even in a default judgment setting, injunctive relief is available.  *Philip Morris USA, Inc.*, 219 F.R.D. at 502. *See also Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin the Defendant from infringing any of Chanel's intellectual property rights, including the Chanel Marks.

The Defendant's complete disregard for Chanel's rights, and its failure to timely respond to this litigation warrant the issuance of a broad permanent injunction.  The facts alleged in Chanel's First Amended Complaint, substantiated by the evidence submitted herewith, show Defendant continuously infringed and induced others to infringe the Chanel Marks by using them to advertise, promote, and sell counterfeit and infringing goods  (*See Am. Compl. ¶ 16.  See also Hahn Decl. ¶¶ 8-10; Tan Decl., ¶¶ 4, 6 and Exs. 1 and 4; Gaffigan Decl. Ex. 1*)).  In addition, Chanel's investigation has revealed the Defendant operates a highly successful online retail business with a large social media following (1.1 million followers on Instagram) as well as being one of the winners of Shopify.com's 2012-13 e-commerce "Build-A-Business" competition (*See Tan Decl. Exs. 4 [capture of Defendant's page on Instagram.com] and 5 [article downloaded from Fastcompany.com detailing the Defendant and the Shopify.com contest]; and Gaffigan Decl. Ex. 1 [capture of Defendant's page on Instagram.com]*).  Accordingly, it is reasonable to infer the Defendant's advertisement and offer to sell counterfeit products bearing the Chanel Marks at issue was far reaching and viewed by numerous consumers.  Indeed, Defendant's unlawful actions have caused irreparable injury to Chanel, and will continue to do so if Defendant is not permanently

8

936094v.1

enjoined.  (*See Am. Compl. ¶24; Hahn Decl. ¶11]* Moreover, the Defendant's failure to timely respond in this action makes it difficult for Chanel to prevent further infringement.  *See PepsiCo.*, 189 F.R.D. at 1178 (granting injunctive relief, in part because "in the absence of opposition by the non-appearing defendant, it cannot be said that it is 'absolutely clear' that Defendant's allegedly wrongful behavior has ceased and will not begin again"); *Philip Morris USA, Inc.*, 219 F.R.D. at 502 ("Failure to grant the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm.").

Furthermore, as admitted by Defendant through default, (i) the Subject Domain Name is an essential component of Defendant's counterfeiting and infringing activities; and (ii) the domain name itself is the means by which Defendant furthers its counterfeiting scheme and causes harm to Plaintiff (*Am. Compl. ¶ 3*.)   Therefore, in order to effectuate the injunction as a practical matter, the Subject Domain Name should be ordered transferred to Plaintiff's control by Defendant, its Registrar, and/or Registry. Absent the transfer of the Subject Domain Name, Defendant will remain free to continue infringing Chanel's trademarks with impunity and will continue to benefit from the Internet traffic to the website built through the unlawful use of the Chanel Marks.

The Court's powers of equity are sufficiently broad to tailor an injunction in the means necessary to preclude future infringement. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, 91 S. Ct. 1267, 28 L. Ed. 2d 554 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case. District courts are expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name, *see* 15 U.S.C. §§ 1125(d)(1)(C) (d)(2). However, the remedy is by no means limited to that context. *See, e.g., Philip Morris USA, Inc. v. Otamedia, Ltd.*, 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (Yesmoke.com domain name transferred to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark

violations in cyberspace."); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (defendants ordered to disclose all other domains held by them and to transfer registration of a particular domain name to plaintiff under authority of 15 U.S.C. § 1116(a)). *See, e.g., Chanel, Inc., v. Bosini*, Case No. C-09-1972-BZ (N.D. Cal. January 19, 2010) (Order denying defendant's motion to strike plaintiff's request for domain transfer, stating the defendant did not argue or persuade the Court that "Section 1125(d) is the exclusive means by which a court can transfer domain names in the exercise of its inherent equitable powers."). When faced with factual scenarios similar to the one herein, even in the absence of a claim for cybersquatting, many courts have not hesitated to order the registrars of the defendant infringer's domain names to transfer the domain names to the plaintiff trademark holder so the offending websites may be disabled.[3]

As demonstrated herein, Defendant has created an Internet-based counterfeiting scheme in which it is profiting from its deliberate misappropriation of Plaintiff's rights.  Accordingly, the Court should eliminate the means by which Defendant is conducting, or could resume conducting, its

---

[3] *See, e.g., Chanel, Inc. v. eukuk.com*, CaseNo. 11-cv-01508-APG (D. Nev. June 17, 2013) (awarding the transfer of 1,118 domain names as part of the grant of final default judgment and permanent injunction); *Louis Vuitton Malletier v. 1854louisvuitton.com*, No. 2:11-cv-00738-PMP-NJK (D. Nev. February 3, 2012) (awarding the transfer of 101 domain names as part of the grants of final default judgment and permanent injunction); *Chanel, Inc. v. Sero*, No. 10-cv-00758-KJD-PAL (D. Nev. January 20, 2011) (awarding the transfer of twenty-five (25) domain names); *Chanel, Inc. v. Aziz*, No. 10-cv-00568-KJD-RJJ (D. Nev. December 23, 2010)(awarding the transfer of twenty-seven (27) domain names); *Chanel, Inc. v. Weng*, No. 10-cv-03620-WHA (N.D. Cal. May 3, 2011) (awarding the transfer of seventeen domain names as part of the grants of final default judgment and permanent injunction); *Chanel, Inc. v. San*, No. 10-cv-02180-RS (N.D. Cal. Jan. 11, 2011) (awarding the transfer of 302 domains names as part of the grants of final default judgment and permanent injunction); *Gucci America, Inc., et al. v. Huoqing*, No. 09-cv-05969-CRB (N.D. Cal. Jan. 5, 2011) (awarding the transfer of twenty-eight domain names from as part of the grants of final default judgment and permanent injunction); *Chanel, Inc. v. Ling*, No. CV 10-00551 MMC (N.D. Cal. Aug. 2, 2010) (awarding the transfer of 165 domains names as part of the grants of final default judgment and permanent injunction); *Chanel, Inc. v. Lin*, No. 09-cv-04996-SI-JCS (N.D. Cal. June 21, 2010) (awarding the transfer of seventeen domains names as part of the grants of final default judgment and permanent injunction); *Chanel, Inc. v Dodd*, No. 09-cv-03958-VRW (N.D. Cal. March 5, 2010) (awarding the transfer of nineteen domain names); *Chanel, Inc. v. Paley*, No. 09-cv-04979-MHP (N.D. Cal. March 25, 2010) (awarding the transfer of seventeen domain names as part of the grants of final default judgment and permanent injunction).

936094v.1

unlawful activities by transferring the Subject Domain Name to Plaintiff, where it may be disabled from further use as platforms for the sale of counterfeit goods.

### 2. Damages as to Count I for Trademark Counterfeiting.

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of goods. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds Defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of goods. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff elects to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to set an amount of statutory damages. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991) (citing *Harris v. Emus Record Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (concluding that the Court's discretion in setting the amount of copyright damages is wide, "constrained only by specific maxima and minima")). Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003)(awarding statutory damages where plaintiff failed to prove actual damages or profits); *Herman Miller, Inc. v. Alphaville Design, Inc.*, Case No. C 08-03437 WHA, 2009 WL 3429739 (N.D. Cal. Oct. 22, 2009)(same). Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages). This case is no exception.

Additionally, a defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216-17 (9th Cir. 2003). A defendant is deemed to have acted willfully where the defendant

11

936094v.1

knowingly and intentionally infringes the plaintiff's intellectual property rights. *id.* Willfulness may also be inferred from Defendant's default. (*Am. Compl. ¶ 21*). *See Adobe Systems, Inc. v. Taveira*, No. C 08-2436 PJH, 2009 WL 506861, at *5 (N.D. Cal. Feb. 27, 2009) (upon default, Plaintiff's unrebutted allegations that Defendant's conduct was willful taken as true)). In either case, the Defendant is deemed to have the requisite knowledge that its acts constitute an infringement. *id.*

The Chanel Marks are renowned worldwide as identifiers of high quality merchandise. Defendant's sale of goods using marks which are identical or altered to be identical to such strong marks shows its desire and purpose to trade upon Plaintiff's goodwill. *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir. 1985), cert denied, 474 U.S. 1059 (1986). The Ninth Circuit has held that "when an alleged infringer knowingly adopts a Mark similar to another's, courts will presume an intent to deceive the public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993). Indeed, in a case of clear-cut copying such as this, it is appropriate to presume Defendant intended to cause confusion and benefit from the Plaintiff's reputation, to the detriment of the Plaintiff. *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991); *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999), *cert. denied*, 528 U.S. 1155, 120 S.Ct. 1161, 145 L. Ed.2d 1073 (2000) ("Adopting a designation with knowledge of its trademark status permits a presumption of intent to deceive. . . In turn, intent to deceive is strong evidence of a likelihood of confusion.").

Express evidence of Defendant's intent to capitalize on the reputation and goodwill of the Chanel Marks is found in the Defendant's intentional identical copying of Chanel's world famous marks. In any event, Defendant has defaulted on Plaintiff's allegations of willfulness. (*See Am. Compl. ¶ 21*.) As such, the Court should award a significant amount of statutory damages available under the Lanham Act to ensure Defendant does not continue its intentional and willful counterfeiting and infringing activities.

The only available evidence in this case demonstrates Defendant distributed, advertised, offered for sale, and/or sold at least two (2) types of goods, namely pants and shirts each bearing marks which were in fact counterfeits of the Chanel Marks protected by two (2) Federal trademark

registrations for such goods.[4] (*See Hahn Decl. ¶ 10; Tan Decl., ¶¶4, 6, and Exs. 1 and 4; Gaffigan Decl. Ex. 1*).  The statute does not provide any guidance as to how a damage award pursuant to 15 U.S.C. § 1117(c) should be calculated by the Court – only a range in which the award must fall.  Based upon the above considerations, Chanel respectfully suggests the Court start with the baseline statutory minimum award of $20,000.00 and then treble it to reflect Defendant's willfulness and for the purpose of deterrence.  The result would be $60,000.00 per registered Mark counterfeited (2) per types of goods sold (2) for a total award amount of $240,000.00 in statutory damages as to Count I.  Chanel believes this amount fairly achieves the statutory goals of compensation, punishment and deterrence.

The requested damage amount is at the low end of the range prescribed under 15 U.S.C. § 1117(c)(2) and is appropriate based on Defendant's extensive and willful counterfeiting of the Chanel Marks.  The award should be sufficient to deter Defendant and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendant, all stated goals of 15 U.S.C. § 1117 (c).  Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; *Phillip Morris USA, Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123-24 (C.D. Cal. 2007) (awarding plaintiff $1,000,000.00 per mark infringed "based on the need (1) to deter Defendant, and other counterfeiters, from violating Plaintiff's valid trademarks, (2) to compensate Plaintiff for the damage caused by Defendant's actions, and (3) to punish Defendant for his willful violation of Plaintiff's trademarks"). Other courts have granted statutory damages under the Lanham Act at a level similar to or greater than Plaintiff's request herein.  *See, Chanel, Inc. v. Anthony Wynn*, Case No. 14-cv-00534-GMN (Dist. of Nev. 3/30/15) (awarding $894,000.00 for seven registrations and six types of goods); *Chanel, Inc. v. Tiayi Art, LLC*, Case No. 13-cv-0274-APG (Dist. of Nev. 5/1/14) (awarding $500,000.00 for six registrations and five types of goods); *see also, Otter Products, LLC. v. Anke Group*, Case No. 2:13-

---

[4] On March 11, 2016, Registration No. 0,958,616 for the mark COCO was cancelled by the Patent and Trademark Office.   Accordingly, Chanel is no longer seeking any relief associated with this Registration.

936094v.1

cv-00029-MMD (Dist. of Nev. 10/31/13) (awarding $2,000,000.00 for four registrations and one type of good).

### 3. Plaintiff's Damages as to Counts II, III, IV, V and VI

In addition to federal trademark counterfeiting (Count I), Plaintiff's Complaint also sets forth causes of action for federal trademark infringement (Count II), false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count III), federal trademark dilution (Count IV), common law trademark infringement (Count V), and common law unfair competition (Count VI). As to Counts II, III, and IV, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117. Accordingly, judgment on Counts II, III and IV should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### 4. Costs Should Be Awarded.

Plaintiff also requests this Court award costs in the total amount of $400.00 consisting of the filing fee. (*See Burris Decl. ¶ 4, ECF No. 10-1*.)

## II. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter final default judgment and a permanent injunction against Defendant in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

DATED: April 7, 2016.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

By: /s/ J. Scott Burris
J. Scott Burris
Attorney for Plaintiff
CHANEL, INC., a New York Corporation

936094v.1